UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

PHOEBE BERG, TOSHIRO KIDA, JOHN RIVERA, DAYNA ROZENTAL and JONATHAN JETTER, individually and on behalf of a class of all others similarly situated,

Plaintiffs,

-against-

NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY; CHIEF OF NEW YORK CITY POLICE DEPARTMENT JOSEPH ESPOSITO; NEW YORK CITY POLICE DEPARTMENT OFFICERS/ SERGEANTS YESENIA AYALA, Sh. No. 13587; BRENDA BATCHER, Sh. No. 18825; MATHEW BETTING, Sh. No. 12343; CYNTHIA BOYLE, Sh. No. 6663; STEPHEN CAROLAN, Sh. No. 6693; MICHAEL CASALE, Sh. No. 30092; CHRISTOPHER CLARK, Sh. No. 30815; NATHAN COLLINS, Sh. No. 11773; FRANCISCO COSTA, Sh. No. 20660; JESSE COTTON, Sh. No. 1178; CHRIS DEFEO, Sh. No. 19936; JOSEPH DIAZ, Sh. No. 4744; THANYA DUHANEY, Shield No. 5584; JEANETTE FIUEROU, Sh. No. 6040; DEBORAH GARBUTT, Sh. No. 29583; JAMES GATTO, Sh. No. 27905; MATTHEW GRESSWELL, Sh. No. 10994; STEPHEN MAZZARD, Sh. No. 31071; MICHAEL RODER, Sh. No. 25253; DOUGLAS SHEEHAN, Sh. No. 26759; DIXON SU, Sh. No. 7680; PETER VOLAIRE, Sh. No. 27518; JOHN DOES 1-10 (whose identities are currently unknown but who are known to be police officers and/or supervisory personnel of the New York City Police Department); in their individual and official capacities,

Defendants.

-----------------------------------------------------------------------X

12 Civ. 3391 (TPG)

**CLASS ACTION COMPLAINT**

**ECF CASE**

**JURY TRIAL DEMANDED**

Plaintiffs PHOEBE BERG ("Berg"), TOSHIRO KIDA ("Kida"), JOHN RIVERA ("Rivera"), DAYNA ROZENTAL ("Rozental"), and JONATHAN JETTER ("Jetter"), individually and on behalf of a class of all others similarly situated (collectively, "Plaintiffs"), by their attorneys Rankin & Taylor PLLC and Beldock Levine & Hoffman LLP, hereby allege for their complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1.      In this civil rights class action against police officers of the New York City Police Department (the "NYPD"), Berg, Kida, Rivera, Rozental and Jetter, individually and on behalf of a class of all others similarly situated, seek damages and injunctive relief pursuant to 42 U.S.C. § 1983 to redress violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution and the constitution of the State of New York.

2.      These violations occurred when, on November 30, 2011, Plaintiffs sought to demonstrate in affiliation with the Occupy Wall Street ("OWS") movement and the NYPD without any reason or cause detained them for nearly two hours inside an interlocking metal barricade. The NYPD prohibited Plaintiffs from exiting the pen because they were OWS demonstrators, while permitting tourists and journalists to leave. Plaintiffs, numbering between 70 and 120 people, were never charged with any violation, misdemeanor, or crime.

3.      The NYPD's actions violated a provision of the NYPD Patrol Guide mandated by order of the Honorable Robert Sweet, United States District Judge for the Southern District of New York, in *Stauber v. City of New York,* 03 Civ. 9163, dated March 31, 2008 (annexed to this Complaint as Exhibit 1), which states:

> Barrier configuration for demonstrations should not unreasonably restrict access to and participation in the event. For example, attendees should be permitted to leave a barricaded area at any

2

time. In addition, if crowd conditions and other circumstances permit, participants should be permitted to leave and return to the same area. Sufficient openings in the barricades should be maintained for purpose of permitted attendees to leave expeditiously and return to the event as described in this paragraph.

4.      Defendants violated Plaintiffs' clear and established constitutional rights, including their rights to freedom of speech, freedom of association, freedom of assembly, and freedom from unreasonable seizure.

5.      Berg, Kida, Rivera, Rozental and Jetter are New Yorkers who have voiced their support for change in the past and who have plans to demonstrate in New York City in association with OWS in the coming months. As a result of Defendants' acts and omissions under the color of state law and in the scope of their employment with the NYPD, including their violation of an express court order, Plaintiffs' First Amendment rights have been chilled and there is a real and immediate threat that their constitutional rights will be violated by the NYPD again.

6.      By this action, Plaintiffs seek redress for the violations of their constitutional and civil rights and to recover damages they suffered as a result of this incident. Plaintiffs further seek an order enjoining the NYPD from unlawful use of barricades and compelling the NYPD to comply with court orders restricting the use of pens.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (3-4).

8.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiffs' rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiffs' claims arose in the Southern District of New York.

## PARTIES

### Named Plaintiffs

10.     Plaintiff BERG is a resident of Kings County in the State of New York. Berg has worked as a legal archivist at the New School for Social Research for the past six years. She is involved in OWS working groups and has attended more than a dozen demonstrations since November 30, 2011.

11.     Plaintiff KIDA is a resident of Kings County in the State of New York. Kida works part-time for Occucopy, a collective that provides printing for OWS activities and other First Amendment actions.

12.     Plaintiff RIVERA is a resident of Kings County in the State of New York. Rivera has been active in demonstrations for approximately 30 years and has attended at least 100 actions. Rivera is a receptionist at the State University of New York College of Optometry at Times Square, where he has been employed for over twenty years. He is a member of the Civil Service Employees Association, a leading New York union. He writes a blog about his OWS activities.

13.     Plaintiff ROZENTAL is a resident of Nassau Count in the State of New York. She lives with her parents and brother in West Hempstead, New York. Rozental has been active in demonstrations for the past three years. She has been working at a midtown based legal search firm for the past five years. Rozental is actively involved in OWS activities: she helped set up an outdoor kitchen in Zuccotti Park when activities centered there and plans to help serve breakfast on May Day at an OWS action in Bryant Park.

4

14.     Plaintiff JETTER is a resident of Queens County in the State of New York. He is a professor at the State University of New York, Purchase College, and the owner of a business based in midtown Manhattan. Jetter is actively involved to the OWS movement.

### Defendants

15.     Defendant RAYMOND KELLY ("Commissioner Kelly") is and was, at all times relevant herein, the NYPD Commissioner and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the actions, policies, practices and/or customs complained of herein. He is sued in both his individual and official capacity.

16.     Defendant JOSEPH ESPOSITO ("Chief Esposito") is and was at all times the Chief of the NYPD Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacity.

17.     Defendant JOHN DOE 1 is or was at all relevant times a police officer and/or sergeant with the NYPD, and was the incident commander on November 30, 2011, at the demonstration described herein.

18.     Defendant YESENIA AYALA, Shield Number 13587, is or was at all relevant times a police officer with the NYPD. Officer Ayala is sued individually and in his/her official capacity.

19.     Defendant BRENDA BATCHER, Shield number 18825, is or was at all relevant times a police officer with the NYPD. Officer Batcher is sued individually and in her official capacity.

5

20.     Defendant MATTHEW BETTING, Shield Number 12343, is or was at all relevant times a police officer with the NYPD. Officer Betting is sued individually and in his official capacity.

21.     Defendant CYNTHIA BOYLE, Shield Number 6663, is or was at all relevant times a police officer with the NYPD. Officer Boyle is sued individually and in her official capacity.

22.     Defendant STEPHEN CAROLAN, Shield Number 6693, is or was at all relevant times a police officer with the NYPD. Officer Carolan is sued individually and in his official capacity.

23.     Defendant MICHAEL CASALE, Shield Number 30092, is or was at all relevant times a police officer with the NYPD. Officer Casale is sued individually and in his official capacity.

24.     Defendant CHRISTOPHER CLARK, Shield Number 30815, is or was at all relevant times a police officer with the NYPD. Officer Clark is sued individually and in his official capacity.

25.     Defendant NATHAN COLLINS, Shield Number 11773, is or was at all relevant times a police officer with the NYPD. Officer Ayala is sued individually and in his official capacity.

26.     Defendant FRANCISCO COSTA, Shield Number 20660, is or was at all relevant times a police officer with the NYPD. Officer Costa is sued individually and in his official capacity.

27.     Defendant JESSE COTTON, Shield Number 1178, is or was at all relevant times a police officer with the NYPD. Officer Cotton is sued individually and in his official capacity.

6

28.     Defendant CHRIS DEFEO, Shield Number 19936, is or was at all relevant times a police officer with the NYPD. Officer Defeo is sued individually and in his/her official capacity.

29.     Defendant JOSPEH DIAZ, Shield Number 4744, is or was at all relevant times a police officer with the NYPD. Officer Diaz is sued individually and in his official capacity.

30.     Defendant THANYA DUHANEY, Shield number 5584, is or was at all relevant times a police officer with the NYPD. Officer Duhaney is sued individually and in her official capacity.

31.     Defendant JEANETTE FIUEROU, Shield Number 6040, is or was at all relevant times a police officer with the NYPD. Officer Fiuerou is sued individually and in her official capacity.

32.     Defendant DEBORAH GARBUTT, Shield Number 29583, is or was at all relevant times a police officer with the NYPD. Officer Garbutt is sued individually and in her official capacity.

33.     Defendant JAMES GATTO, shield Number 27905, is or was at all relevant times a police officer with the NYPD. Officer Gatto is sued individually and in his official capacity.

34.     Defendant MATTHEW GRESSWELL, Shield Number 10994, is or was at all relevant times a police officer with the NYPD. Officer Greswell is sued individually and in his official capacity.

35.     Defendant STEPHEN MAZZARD, Shield Number 31071, is or was at all relevant times a police officer with the NYPD. Officer Mazzard is sued individually and in his official capacity.

36.     Defendant MICHAEL RODER, Shield Number 25253, is or was at all relevant times a police officer with the NYPD. Officer Roder is sued individually and in his official capacity.

37.     Defendant DOUGLAS SHEEHAN, Shield Number 26759, is or was at all relevant times a police officer with the NYPD. Officer Sheehan is sued individually and in his official capacity.

38.     Defendant DIXON SU, Shield Number 7680, is or was at all relevant times a police officer with the NYPD. Officer Su is sued individually and in his official capacity.

39.     Defendant PETER VOLAIRE, Shield Number 27518, is or was at all relevant times a police officer with the NYPD. Officer Volaire is sued individually and in his official capacity.

40.     JOHN DOES 2-50, are or were at all relevant times police officers and/or sergeants with the NYPD. Upon information and belief, John Does 1-50 include officers with surnames Malone, Maryolo, Wagner, Purtell, Tuller, and McNevin, and/or Shield Numbers 31420, 6299, 28579, 11980, 2987, 978, and 9998. John Does 1-50 are sued in their individual and official capacities

41.     At all times relevant herein, the named individual defendants and the unnamed John Doe defendants (collectively "Defendants") were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers,

agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

42.     At all times relevant herein, Defendants violated clearly established constitutional standards under First, Fourth, and Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

43.     Defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice and/or gross disregard for Plaintiffs' rights.

## FACTUAL ALLEGATIONS

44.     On March 31, 2008, the Honorable Robert Sweet, United States District Judge for the Southern District of New York, so-ordered a stipulation entered into and agreed to by the City of New York (the "City") in the case captioned *Ann Stauber and the New York Civil Liberties Union v. the City of New York, et al.*, 03 Civ. 9162 (the "Stauber Settlement and Order") (Ex. A hereto).

45.     The Stauber Settlement and Order arose from actions brought against the City, among others, asserting, *inter alia*, that the NYPD's policy and/or practice of using interlocking metal barricades, or "pens," to confine demonstrators in fixed locations violated the Constitution.

46.     In the Stauber Settlement and Order, the City agreed to insert in the NYPD Patrol Guide the following:

> Note: In cases in which the special event is a demonstration, information on expected street and sidewalk closings and information on how the public may access a demonstration site will be disseminated to the media and to event organizers and should, if possible, be posted on the Department's website. Officers assigned to such events should be given detailed instructions on such closings and points of access prior to assignment. Detail supervisors should also be advised of street closures and points of access and any changes of points of access which occur during the event and which were not previously

9

anticipated and publicized. Officers assigned to such events shall provide information to the public at the event about a available points of access.

47.     In the Stauber Settlement and Order, the City agreed to insert in the NYPD Patrol Guide the following:

> Barrier configuration for demonstrations should not unreasonably restrict access to and participation in the event. For example, attendees should be permitted to leave a barricaded area at any time. In addition, if crowd conditions and other circumstances permit, participants should be permitted to leave and return to the same area. Sufficient openings in the barricades should be maintained for purpose of permitted attendees to leave expeditiously and return to the event as described in this paragraph.

48.     Commissioner Kelly was a party to the Stauber Settlement and Order.

## A Demonstration for the President, November 30, 2011

49.     Upon information and belief, on November 30, 2011, President Barak Obama attended a fundraiser dinner at the Sheraton Hotel (the "Hotel") in New York, New York.

50.     At approximately 8:00 p.m., about 100 people affiliated with OWS events, including Berg, Kida, Rivera, Rozental, and Jetter, sought to demonstrate in front of the Hotel while the President arrived for the fundraiser dinner.

51.     Plaintiffs sought to demonstrate near the President and the media covering the President's event at the Hotel.

52.     Berg, Kida, Rivera, Rozental, Jetter, and others walked to the Hotel in a group.

53.     Plaintiffs carried signs with the intention of sharing messages with the President and the media covering the President's event. Kida carried a sign that said, "Get money out of politics." Berg carried a sign protesting the National Defense Authorization Act.

54.     The Hotel is located on the eastern side of Seventh Avenue between 52nd and 53rd

Streets.

55.     When Berg, Kida, Rivera, Rozental and Jetter attempted to approach the Hotel, they found that the NYPD had erected a barricade with interlocking metal fences approximately three-feet tall on Seventh Avenue, across the street from the Hotel at the southwest corner of 53rd Street.

56.     The barricade created a "U" shape that extended west on 53rd Street toward Broadway for approximately 100 feet, such that there was an opening into and out of the barricade area on 53rd street between Seventh Avenue and Broadway.

57.     The barricades that made up the "U" were locked when Berg, Kida, Rivera, Rozental and Jetter arrived.

58.     Defendants told Berg, Kida, Rivera, Rozental and Jetter in sum or substance that the only place they could stand was inside this locked "U" configuration of barricades.

59.     Berg, Kida, Rivera, Rozental, Jetter and others moved into the center of the "U"-shaped configuration and waited for the President to arrive.

60.     Because of the configuration of the barricade, it was not possible for the demonstrators to get any closer to the Hotel entrance or the media covering the President's visit.

61.     Sanitation trucks blocked the view from the Hotel entrance to the barricaded area.

62.     At approximately 8:30 p.m., Berg, Kida, Rivera, Rozental, and Jetter moved into the NYPD barricades toward the east side, *i.e.*, closer to the Hotel, in order to be as close as possible to the President when he arrived.

63.     At approximately 8:41 p.m., Defendants brought barricades from further west on 53rd Street and closed the opening of the barricaded area, turning the "U" shaped barricade into a rectangular confined area or pen.

11

64.     Upon information and belief, pursuant to customary practice, Chief Esposito's office would have to receive notice of and give consent for the closing of the pen.

65.     Defendants told Plaintiffs in sum or substance that they were not permitted to exit the pen.

66.     One Defendant, in sum and substance, told Jetter that he was not free to leave and that he would be arrested if he attempted to leave the pen. Upon information and belief, other Plaintiffs were told the same.

67.     Defendants prevented the Plaintiffs from exiting the pen.

68.     For example, Rivera, Jetter and others attempted to leave the pen at 9:15 p.m. after learning that the President had arrived and entered the Hotel, but were prohibited from doing so by Defendants.

69.     Plaintiffs were held in the pen for nearly two hours.

70.     During that time, Plaintiffs who sought to leave the pen were prohibited from doing so by Defendants.

71.     Defendants prohibited Plaintiffs from exiting the pen for any reason.

72.     Defendants prohibited Plaintiffs from exiting the pen to use the restroom or to get food.

73.     Plaintiffs who became ill were only able to leave the pen when taken by an ambulance.

74.     For example, one demonstrator, Lisa Rubenstein, who felt ill inside the pen, was taken away by ambulance only after fainting inside the closed pen.

75.      Jetter, who was feeling too sick to remain at the demonstration, was forced to stay despite a fever.

12

76.     During the time that Plaintiffs were trapped in the pen, traffic was moving freely on Seventh Avenue.

77.     During the time that Plaintiffs were trapped in the pen, pedestrians were moving freely on Seventh Avenue and 53rd Street, on the north and east corners of the intersection.

78.     At approximately 10:26 p.m., nearly two hours after the pen was initially closed off and nearly two hours after Plaintiffs were trapped by Defendants inside the pen, the barricades were removed from the west side of the pen.

79.     Upon information and belief, Plaintiffs were treated differently than others at the same intersection at the same time.

80.     Defendants told Berg, Kida, Rivera, Rozental, and Jetter in sum or substance that they were being held because they were protestors.

81.     Upon information and belief, tourists who were trapped in the pen were permitted to exit the pen while demonstrators were held.

82.     Upon information and belief, journalists were permitted to exit the pen while demonstrators were held. For example, upon information and belief, Josh Robin from NY 1 was released from the pen at 9:10 p.m., upon his request.

83.     Upon information and belief, legal observers and members of the press were unable to enter the pen and access Plaintiffs. For example: legal observer Tamara Bedic could not get any closer to the demonstrators than the corner of Broadway and 53rd Streets; journalists Josh Harkinson (Mother Jones), Meg Robertson (MSNBC) and Andrew Katz (Brooklyn Ink), were not allowed to approach the pen on foot from the West; when Mr. Harkinson and Mr. Katz were later able to approach by taking a cab south on 7th Avenue, they were escorted away from the area when they began talking to demonstrators in the pen.

84.    Berg, Kida, Rivera, Rozental and Jetter were not charged with any violation, misdemeanor or crime.

85.    Upon information and belief, none of the Plaintiffs was charged with any violation, misdemeanor, or crime.

86.    Upon information and belief, Plaintiffs were held in the pen because of their affiliation with the OWS movement.

87.    Berg, Kida, Rivera, Rozental, and Jetter are active in the OWS movement and have plans to attend demonstrations affiliated with OWS in New York City the next few months.

88.    Plaintiffs have avoided demonstrations after the November 30, 2011, incident for fear of becoming trapped in an NYPD erected pen. For example, Berg did not attend a demonstration she would have otherwise attended at another presidential fundraiser, and abandoned demonstrations where NYPD appeared with barricade fences, due to fear of being trapped in such a pen again.

## CLASS ACTION ALLEGATIONS

89.    Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Berg, Kida, Rivera, Rozental, and Jetter seek to represent persons who were detained in the pen erected by the NYPD at Seventh Avenue and 53rd Street on the evening of November 30, 2011.

90.    The members of the class, believed to number between 70 and 120, are so numerous as to render joinder impracticable. Berg, Kida, Rivera, Rozental, and Jetter currently have information identifying at least 47 class members.

91.    In addition, joinder is impracticable because many members of the class live outside of New York State and some live outside of the United States. Moreover, many class members who have been victimized by the defendants' unconstitutional policies and practices

14

may not bring individual claims. There is no adequate avenue for the protection of the class members' constitutional rights other than a class action.

92.    The class members share a number of questions of law and fact in common, including but not limited to the following:

    i.   Whether interlocking barricades were erected and maintained on the evening of November 30, 2011 in a manner that amounted to an unlawful seizure in contravention of the Fourth Amendment.

    ii.   Whether interlocking barricades were erected and maintained on the evening of November 30, 2011 in a way that constituted an unreasonable restriction on speech in contravention of the First Amendment.

    iii.   Whether the NYPD targeted the Plaintiffs on November 30, 2011, because of their perceived association with OWS in violation of the equal protection clause of the Fourteenth Amendment.

93.    These common questions of fact and law all flow from the same policies, enacted by the same defendants, and implemented by the same named and unnamed defendants.

94.    The claims of the named plaintiffs are typical of those of the class in that, *inter alia*, at the time their constitutional rights were violated, they were engaging and attempting to engage in activities protected by the First Amendment and they were treated by the NYPD in the same manner as members of the class, resulting in violations of their First, Fourth and Fourteenth Amendment rights under the United States Constitution.

95.    The named plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the plaintiff class, and will fairly and adequately protect the interests of the class. Moreover, the named plaintiffs reside in the New York area and

intend to continue to participate in demonstrations in New York City, where the defendants' unconstitutional policies, practices and customs are implemented, and therefore remain at high risk of being unconstitutionally harmed in the future pursuant to these policies, practices and customs.

96.     The named plaintiffs are represented by the undersigned counsel, civil rights lawyers with experience litigating a wide range of civil rights and class action lawsuits.

  i. RANKIN & TAYLOR PLLC has broad civil rights experience from litigating matters in numerous contexts.  The firm handles a strong ongoing police misconduct docket in both state and federal court. They have also won significant victories in the employment context.  In addition to individual plaintiff actions, RANKIN & TAYLOR, in partnership with two solo practitioners, handled a mass action of over 80 plaintiffs arrested during the NYPD's crackdown on Critical Mass bike rides, *Callaghan v. City of New York,* 07-cv-9611, and has litigated several other multiple plaintiff matters over public assembly issues, property confiscations, and wage and hour violations.  The firm's eight attorneys represent significant experience and resources in handling complex actions.

  ii. Beldock Levine & Hoffman LLP, a New York law firm founded in 1964 with an extensive civil and criminal practice that has handled police misconduct and constitutional litigation for almost thirty years, has extensive experience litigating civil rights cases and class action lawsuits. Representative civil rights cases in which Beldock Levine & Hoffman LLP has acted as class counsel include: *MacNamara, et al., v. the City of New York*, 04 Civ. 09216

16

(S.D.N.Y.) (RJS)(JCF) (challenging the arrest and detention of demonstrators at the 2004 Republican National Convention, recently granted class status); *Daniels v. New York*, 99 Civ. 1695 (S.D.N.Y.) (SAS) (challenging the City's policy and practice of suspicionless and race-based stops and frisks); *Burley et al. v. City of New York, et al.*, 03 Civ. 735 (S.D.N.Y.) (Pauley, J.) (challenging excessive detention of demonstrators arrested for minor offenses during the 2002 World Economic Forum).

97.    Counsel for the plaintiffs have the resources, expertise, and experience to prosecute this action. Counsel for the plaintiffs know of no conflicts among members of the class or between the attorneys and members of the class.

98.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The class is readily defined and prosecution of a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims which may not be large enough to warrant the expense of individual litigation.

99.    All named plaintiffs and class members were victimized by the same policies, practices, customs and/or conduct and thus common questions of law and fact greatly predominate over any questions affecting only individual members, including legal and factual issues relating to damages.

100.    The plaintiff class should be certified pursuant to Rule 23(a) and (b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**FIRST CAUSE OF ACTION**
**PURSUANT TO 42 U.S.C. § 1983**
**DEPRIVATION OF FIRST AMENDMENT RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION**

101.    Plaintiffs reiterate paragraph 1 through 100 and incorporate such by reference herein.

102.    By the acts alleged herein, Defendants, acting under color of state law and in their individual and official capacities and within the scope of their employment, have deprived each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including but not limited to their right to freedom of speech, freedom of association, and freedom of assembly.

103.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those detained on November 30, 2011, have suffered injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

104.    Because Defendants, acting under color of state law, in their individual and official capacities and within the scope of their employment, detained demonstrators perceived to be affiliated with OWS in pens built out of interlocking metal barricades contrary to express court order and the NYPD Patrol Guide, because this activity has already chilled Plaintiffs from exercising their First Amendment rights, and because Plaintiffs have plans to demonstrate at upcoming OWS affiliated events in New York City, a real and immediate threat exists that Plaintiffs' First Amendment rights by the NYPD in the future.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless

18

Defendants are enjoined from further violating the Stauber Settlement and Order.

105.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those who seek to demonstrate in New York City, will continue to suffer injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

**SECOND CAUSE OF ACTION**
**PURSUANT TO 42 U.S.C. § 1983**
**DEPRIVATION OF FOURTH AMENDMENT RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION**

106.    Plaintiffs reiterate paragraph 1 through 105 and incorporate such by reference herein.

107.    By the acts alleged herein, Defendants, acting under color of state law and in their individual and official capacities and within the scope of their employment, have deprived each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including without limitation unreasonable seizure.

108.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those detained on November 30, 2011, have suffered injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

109.    Because Defendants, acting under color of state law, in their individual and official capacities and within the scope of their employment, detained demonstrators perceived to be affiliated with OWS in pens built out of interlocking metal barricades contrary to express court order and the NYPD Patrol Guide, and because Plaintiffs have plans to demonstrate at

upcoming OWS affiliated events in New York City, a real and immediate threat exists that Plaintiffs' Fourth Amendment rights by the NYPD in the future. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from further violating the Stauber Settlement and Order.

110.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those who seek to demonstrate in New York City, will continue to suffer injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

**THIRD CAUSE OF ACTION**
**PURSUANT TO 42 U.S.C. § 1983**
**DEPRIVATION OF FOURTHEENTH AMENDMENT**
**RIGHTS TO EQUAL PROTECTION OF THE LAW**
**UNDER THE UNITED STATES CONSTITUTION**

111.    Plaintiffs reiterate paragraph 1 through 110 and incorporate such by reference herein.

112.    By the acts alleged herein, Defendants, acting under color of state law and in their individual and official capacities and within the scope of their employment, have deprived each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

113.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those detained on November 30, 2011, have suffered injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

114.    Because Defendants, acting under color of state law, in their individual and official capacities and within the scope of their employment, detained demonstrators perceived to be affiliated with OWS in pens built out of interlocking metal barricades contrary to express court order and the NYPD Patrol Guide, because this activity has already chilled Plaintiffs from exercising their First Amendment rights, and because Plaintiffs have plans to demonstrate at upcoming OWS affiliated events in New York City, a real and immediate threat exists that Plaintiffs' First Amendment rights by the NYPD in the future.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from further violating the Stauber Settlement and Order.

115.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those who seek to demonstrate in New York City, will continue to suffer injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

### FOURTH CAUSE OF ACTION
### PURSUANT TO 42 U.S.C. § 1983
### DEPRIVATION OF FOURTEENTH AMENDMENT RIGHTS
### TO DUE PROCESS UNDER THE UNITED STATES CONSTITUTION

116.    Plaintiffs reiterate paragraph 1 through 115 and incorporate such by reference herein.

117.    By the acts alleged herein, Defendants, acting under color of state law and in their individual and official capacities and within the scope of their employment, have deprived each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

21

118.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those detained on November 30, 2011, have suffered injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

119.    Because Defendants, acting under color of state law, in their individual and official capacities and within the scope of their employment, detained demonstrators perceived to be affiliated with OWS in pens built out of interlocking metal barricades contrary to express court order and the NYPD Patrol Guide, because this activity has already chilled Plaintiffs from exercising their First Amendment rights, and because Plaintiffs have plans to demonstrate at upcoming OWS affiliated events in New York City, a real and immediate threat exists that Plaintiffs' First Amendment rights by the NYPD in the future.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from further violating the Stauber Settlement and Order.

120.    As a direct and proximate result of the misconduct described above, each and every plaintiff and members of the plaintiff class of those who seek to demonstrate in New York City, will continue to suffer injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

### FIFTH CAUSE OF ACTION
### FAILURE TO INTERVENE TO PREVENT VIOLATIONS OF
### FIRST, FOURTH, AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983

121.    Plaintiffs reiterate paragraph 1 through 120 and incorporate such by reference herein.

122.    Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they

observe another member of the Police Department or other law enforcement agency falsely arresting a civilian.

123.    Defendants were present for the above-described incident and witnessed other officer-defendants unlawfully detain and/or seize and/or arrest Plaintiffs.

124.    Defendants' detention of plaintiffs was unjustified under the circumstances yet Defendants failed to take any action or make any effort to intervene, halt or protect the plaintiffs from being unlawfully detained.

125.    Defendants violated Plaintiffs' constitutional rights by failing to intervene in other defendants' clearly unconstitutional arrests, resulting in injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NEW YORK STATE CONSTITUTION

126.    Plaintiffs repeat and re-allege paragraphs 1 through 123 as if fully set forth herein.

127.    Defendants subjected Plaintiffs to the foregoing acts and omissions without due process of law, thereby depriving Plaintiffs of rights, privileges, and immunities secured by Article 1, §§ 8, 9, 11, and 12 of the New York State Constitution, including, without limitation, the following deprivations of his rights, privileges, and immunities:

i.    Plaintiffs were deprived of freedom of speech, in violation of New York State Constitution Article 1, § 1;

ii.    Plaintiffs were deprived of freedom of assembly and petition, in violation of New York State Constitution Article 1, § 8;

iii.    Plaintiffs were deprived of his right to equal protection under the law and was subjected to discrimination based on their perceived political opinion, in violation of New York State Constitution Article 1, § 11; and

23

Plaintiffs were deprived of their right to be free from unreasonable searches and seizures, in violation of New York State Constitution Article 1, § 12.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

I.   Enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) for the plaintiff class described herein and naming plaintiffs as the class representatives;

II.   Enter a judgment declaring that Defendants' actions on November 30, 2011, were unconstitutional;

III.   Issue an order enjoining Defendants' from discouraging peaceful protest;

IV.   Issue an order compelling Defendants to comply with Section 213-11, 21(h)(3) of the New York Police Department Patrol Guide, which, following the Stipulation of Settlement and Order of Judge Sweet in *Stauber v. City of New York,* 03-cv-9163 (March 31, 2008), states,

> Barrier configuration for demonstrations should not unreasonably restrict access to and participation in the event. For example, attendees should be permitted to leave a barricaded area at any time. In addition, if crowd conditions and other circumstances permit, participants should be permitted to leave and return to the same area. Sufficient openings in the barricades should be maintained for purpose of permitted attendees to leave expeditiously and return to the event as described in this paragraph;

V.   Award Plaintiffs damages in an amount to be determined at trial;

VI.   Award Plaintiffs punitive damages in an amount to be determined at trial;

VII.   Award Plaintiffs reasonable attorneys fees and costs as authorized pursuant to 42 U.S.C. § 1988; and

VIII.    Grant such other further and different relief as to the Court may seem just and

proper.

Dated:   New York, New York

April 30, 2012

Respectfully submitted,

By:    /s/

David B. Rankin
Paula Z. Segal, J.D.
Rankin & Taylor PLLC
350 Broadway, Suite 701
New York, New York 10013
212-226-4507

Jonathan C. Moore
Jenn Rolnick Borchetta
Beldock Levine & Hoffman LLP
99 Park Avenue, Suite 1600
New York, NY 10016
(212) 490-0400

*Attorney for the Plaintiffs*